UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TERRANCE FIELDS, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|   v. | ) CASE NO.: 1:22-cv-181-HAB-SLC |
| | ) |
| CITY OF MARION, OFFICER NICK | ) |
| MCPIKE, and SGT MARK BONNEAU | ) |
| | ) |
|   Defendants. | ) |

## OPINION AND ORDER

Plaintiff, Terrance Fields ("Fields"), alleges that City of Marion Police Officer Nick McPike ("Officer McPike") subjected him to unreasonable and excessive force when Officer McPike "punched him in the face after he was already in handcuffs, subdued, and not resisting." (ECF No. 45). Yet Officer McPike's body camera captured a different series of events. After Fields fled on foot, Officer McPike chased Fields down and a struggle ensued. Before placing him in handcuffs and amid this struggle, Officer McPike struck Fields. Given the circumstances, Officer McPike's use of force was far from excessive. Any objective observer would agree.

Defendants move for summary judgment.[1] (ECF Nos. 50, 51). Officer McPike rightly contends that his use of force was reasonable. Sergeant Mark Bonneau ("Sergeant Bonneau"), the second officer on scene, contends that Fields' failure to intervene claim against him fails because "if there is no excessive force then there can be no failure to intervene." *Abdullahi v. City of Madison*, 423 F.3d 763, 767–68 (7th Cir. 2005). The City of Marion contends that Fields' failure

---

[1] Fields did not respond to Defendants' Motion for Summary Judgment. (ECF Nos. 50, 51). His counsel moved to withdraw from representation about 20 days after the deadline to respond had passed. (ECF Nos. 56, 57).

1

to train claim under *Monell v. Dep't of Soc. Services*, 436 U.S. 658, (1978), also fails because "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield, Ill*., 630 F.3d 499, 504 (7th Cir. 2010). Because there is no merit to Fields' underlying excessive force claim, summary judgment will be GRANTED for Defendants.

I.      **Factual Background**

On October 26, 2021, Officer McPike observed Fields driving a car at a high rate of speed, fail to stop at a red light, and turn without signaling. (ECF No. 53-4). Officer McPike pulled Fields over. (*Id*.). Officer McPike's body camera captured the entire stop. (ECF No. 54)

Upon stopping, Fields got out of his car and started walking towards Officer McPike. (*Id*). As Fields approached, Officer McPike informed Fields of his failure to use his turn signal and asked for identification. (*Id*.). Without any provocation, Fields made a run for it.[2] (*Id*.). When asked why he ran, Fields said he had been drinking that night,[3] he was on probation from a prior conviction, his license was suspended, and he feared being arrested and going to prison. (ECF No 51, ¶ 5). Officer McPike gave chase, however short-lived that chase was.

Fields made it across the street and a few steps into the neighboring yard before stumbling to the ground. (ECF No. 54). Officer McPike then jumped on top of Fields and the struggle began. (*Id*.). Before Officer McPike could place him in cuffs, Fields "tussled" with the officer. (*Id.*). During this brief "tussle," Fields twisted and pulled one of his hands out of Officer McPike's grasp. (ECF No. 51 at 5). Officer McPike then felt a downward tug on his belt where his firearm was holstered. (*Id*.). Fearing that Fields was attempting to grab his firearm, Officer McPike employed

---

[2] Fields admits that nothing Officer McPike said or did caused him to run; Fields made the decision "on his own." (ECF No 53 at 41-42).
[3] Fields later pleaded guilty to operating a vehicle while intoxicated, a Level 6 felony, based on these events. (ECF No. 53-5).

2

a closed-fist strike to Field's jaw to subdue him. (*Id.*). Fields was silent during the entire struggle and no other law enforcement officer was present. (ECF No. 54).

After the struggle, Officer McPike announced over his police radio, "I've got him detained. He's not in cuffs yet." (*Id.*). A few seconds later, Sergeant Bonneau arrived on the scene and helped get Fields handcuffed. (*Id.*). The body camera footage reveals that Officer McPike never got "mad" at Fields, never spoke disrespectfully to Fields, and maintained a professional demeanor throughout the interaction. For Fields, the opposite is true. Although quiet before being placed in handcuffs, he later began saying "impolite" things to officers even demanding that officers remove his cuffs so that "he could put a pistol to their mother [explicative] heads." (*Id.*). Even still, Officer McPike's demeanor remained calm and respectful. (*Id.*)

From these events, Fields alleges the following:

(1) Officer McPike subjected him to unreasonable force when Officer McPike punched him in the face after he was already in handcuffs, subdued, and not resisting.

(2) Sergeant Bonneau had a reasonable opportunity to stop Officer McPike from striking him in the jaw but stood by, watched, and did nothing to stop Officer McPike from doing so.

(3) The City of Marion had a policy of deliberate indifference to training and supervision of its police officers which policy caused Officer McPike to use the force that he used and also caused Sergeant Bonneau to standby and do nothing.

(ECF No. 45, ¶¶ 9, 10, 14).

## II.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making its determination a court must construe all facts "in a light most favorable to the non-moving party" and "draw all legitimate inferences in favor of that party." *Williams v. Norfolk*

3

*S. Corp.*, 322 F. Supp. 3d 896, 899 (N.D. Ind. 2018) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). That said, when there is video evidence of the events at issue, a court should not accept the non-moving party's version of the facts when it is "utterly discredited" or "blatantly contradicted" by the video. *Scott v. Harris*, 550 U.S. 372, 379-80 (2007).

"A dispute about a material fact is genuine only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rose v. Birch Tree Holdings, LLC*, No. 2:18 CV 197, 2022 WL 3656986, at *2 (N.D. Ind. Aug. 25, 2022) (quoting *Anderson*, 477 U.S. at 248). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247- 428 (1986) (emphasis in original).

That a motion for summary judgment is unopposed doesn't change the summary judgment standard, and the court still conducts "more than just a cursory review of the filings" and scrutinizes the movant's factual submissions in order to "determine that the motion is sound and within the parameters of the law." *Leal v. TSA Stores, Inc.*, No. 2:13 CV 318, 2014 WL 7272751, at *1 (N.D. Ind. Dec. 17, 2014). An unopposed motion does, however, "reduce the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). Mindful of these standards, the Court turns now to the substance of the case.

**III.    Discussion**

Fields' entire case rises and falls on one issue: whether "Officer McPike subjected Fields to excessive and unreasonable force against his right to be free from unreasonable seizure pursuant to the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983."[4] (ECF No. 45, ¶ 11). At his deposition, Fields told his side of the story. Fields' testimony was that he was handcuffed and defenseless as Officer McPike punched him in the face, Sergeant Bonneau stood idle, and the City of Marion's poor training allowed it to happen. If not for Officer McPike's body camera footage, this testimony alone would likely preclude summary judgment. But the footage "utterly discredits" and "blatantly contradicts" Fields' version of events. *See Scott*, 550 U.S. at 379-80. The video makes clear that Officer McPike acted reasonably, and his use of force was not excessive. Accordingly, all Defendants are entitled to summary judgment.

A claim for excessive force under Section 1983 invokes the Fourth Amendment's protection against unreasonable seizures. *Turner v. City of Champaign*, 979 F.3d 563, 567 (7th Cir. 2020). "The reasonableness standard is objective, 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham v. Connor* 490 U.S. 386, 389 (1989)). Reasonableness is assessed under the "totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.*

Officer McPike conducted a valid traffic stop when Fields failed to use his turn signal. Upon stopping, Fields made the curious decision to get out of his car and approach Officer McPike. Fields then attempted to "evade arrest by flight." *See Turner*, 979 F.3d at 567. When Fields fell,

---

[4] Fields cannot maintain a failure to intervene claim against Sergeant Bonneau or a *Monell* claim against the City of Marion without surviving summary judgment on his excessive force claim against Officer McPike. *See Abdullahi,* 423 F.3d at 767–68 (7th Cir. 2005); *Sallenger*, 630 F.3d at 504.

Officer McPike jumped on him, and a brief struggle took place in which Officer McPike struck Fields' jaw. No other law enforcement officers were present when Officer McPike struck Fields.

In his complaint and during his deposition, Fields claims that he was in handcuffs and not resisting when Officer McPike struck him. (ECF Nos. 45, 53-2). That contention flouts the objective video evidence. (ECF No. 54). Fields admits to "tussling" with Officer McPike and making "impolite" statements which he claims made Officer McPike "mad." (ECF No. 53-2). He believes this anger drove Officer McPike to strike him while he was still in handcuffs. (*Id.*). Fields' narrative is flawed on several levels.

First, Fields was not in handcuffs when Officer McPike struck him. (ECF No. 54). When Officer McPike jumped on top of him, Fields arms were still free and he was fighting Officer McPike's efforts to apprehend him. Although Fields uses the term "tussling" to downplay the severity of his actions, it is synonymous with "resisting" here. At that time, Officer McPike did not know if Fields possessed a weapon, what his motivations for running were, or what danger he posed to officers or others. *See Turner,* 979 F.3d at 569 (Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). When Officer McPike felt pulling on his belt near his firearm, additional force became necessary. *See id.* ("Unlike when someone is passively refusing to move or follow lawful commands, the police may use significant force to subdue someone who is actively resisting lawful detention."). Officer McPike struck Fields and the struggle ended, but Fields still was not in cuffs. (*See* ECF No. 54 at 01:35:05 ("I've got him detained. He's not in cuffs yet.")). Sergeant Bonneau then arrived and assisted in placing Fields in handcuffs. It was only once the handcuffs were placed on Fields that the "impolite" comments started flowing. Meanwhile, Officer McPike never raised his voice and maintained a calm demeanor.

6

During Fields's deposition, he disputed that he reached for the Officer McPike's firearm. Yet no evidence contradicts Officer McPike's reasonable perception of events during the struggle. Even so, that dispute would not change the Court's analysis. *See Anderson,* 477 U.S at 247 (Only disputes over "*material* facts" will preclude the entry of summary judgment). Officer McPike is permitted to use "significant force" to subdue somebody who is actively resisting a lawful arrest. *See Turner,* 979 F.3d at 569. The "significant force" here—one blow to the face—is far less than force found to be constitutional in other cases where a suspect fled and actively resisted arrest. *See e.g.*, *Duran v. Sirgedas*, 240 Fed. App'x 104 (7th Cir. 2007) (officer who struck a suspect in leg with baton and punched him once in the head with a closed fist did not use excessive force where the suspect had walked fast to avoid arrest and then struggled with the officer); *Prymer v. Ogden*, 29 F.3d 1208, 1210 (7th Cir. 1994) (kneeling on arrestee's back and giving him a couple of "quick jab kicks in the ribs" was found objectively reasonable where the arrestee resisted arrest, struggled with officers, and held his hands under his body to prevent officers from handcuffing him); *Williams v. Hall*, 2021 WL 4125247 (N.D. Ind. Sept. 9, 2021) (officer who punched a suspect in the face and administered three "hammer strikes" to his head used reasonable force where the suspect was actively resisting the officers attempt to arrest him).[5]

It is undisputed that Fields fled from Officer McPike and was actively resisting arrest when Officer McPike struck him. Fields ran without warning or provocation. When Officer McPike jumped on Fields, he was flailing and rolling around with his arms still free. Given the circumstances here, Officer McPike was permitted to use significant force to subdue Fields. That

---

[5] *See also Brooks v. City of Aurora*, 653 F.3d 478, 486-87 (7th Cir. 2011) (officers did not use excessive force when they pepper sprayed a suspect who was "backpedaling" and using his arms to knock away the officers' hands during arrest); *Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009) (police K-9 dog bite was not unreasonable after a suspect fled from the police on foot where his claim to have stopped running and surrendered was "questionable"); *Radjen v. Parrish*, 2009 WL 3060206 (N.D. Ind. Sept. 21, 2009) (finding no excessive force when an officer threw a suspect against truck of a patrol car because a reasonable officer would have thought suspect was continuing to struggle and that the officer needed to gain physical control over suspect).

force came in the form of one single blow to Fields' face. That blow was reasonable in light of Fields' "tussling" and the potential dangers he presented. Officer McPike's body camera captured all of this. There is no material issue of fact which would preclude summary judgment in Officer McPike's favor.

Because the Court grants summary judgment on the underlying excessive force claim, Fields' claims against Sergeant Bonneau and the City of Marion must also fall. Fields' sole claim against Sergeant Bonneau is that he failed to intervene when Officer McPike struck Fields. (ECF No. 45). Fields also tries to hold the City of Marion vicariously liable for Officer McPike's conduct by alleging the municipality maintained a policy of deliberate indifference to its officers' training and supervision. (*Id.*). As to Sergeant Bonneau, he did not arrive on scene until well after the blow occurred. (ECF No. 54). Even if that were not the case (it is), Fields cannot sustain a failure to intervene claim if there is no excessive force claim. *Abdullahi*, 423 F.3d at 767–68 ("The fate of [a] plaintiff's failure to intervene claim is closely linked to that of his excessive force claim since, by definition, if there is no excessive force then there can be no failure to intervene."). As stated above, Officer McPike's conduct was reasonable, so there can be no failure to intervene claim. Fields' *Monel* claim fails for the same reason. *See Sallenger,* 630 F.3d at 504 ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."). Thus, summary judgment for all Defendants is appropriate.

### IV.   Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 50) is GRANTED. The CLERK is DIRECTED to enter judgment in favor of Defendants and against Plaintiff as to all claims asserted in Plaintiff's Amended Complaint (ECF No. 45). The Telephonic Motion Hearing (ECF No. 60) is VACATED and the pending Motion to Withdraw (ECF No. 57)

is DENIED as MOOT.

      SO ORDERED on May 2, 2024.

                                                s/ *Holly A. Brady*
                                                CHIEF JUDGE HOLLY A. BRADY
                                                UNITED STATES DISTRICT COURT